UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FACULTY, ALUMNI, AND STUDENTS
OPPOSED TO RACIAL PREFERENCES,

                 Plaintiff,

                 v.

NEW YORK UNIVERSITY LAW REVIEW;
NEW YORK UNIVERSITY SCHOOL OF LAW;
NEW YORK UNIVERSITY; BETSY DEVOS, in
her official capacity as U.S. Secretary of Education;
UNITED STATES OF AMERICA,

                 Defendants.

**No. 18 Civ. 9184 (ER)**

---

## MEMORANDUM OF LAW IN SUPPORT OF
## THE GOVERNMENT'S MOTION TO DISMISS

GEOFFREY S. BERMAN
United States Attorney for
Southern District of New York
United States Attorney's Office
86 Chambers Street, Third Floor
New York, New York 10007

Arastu K. Chaudhury
Assistant United States Attorney
      *Of Counsel*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ........................................................................................................................2

    I.      Statutory and Regulatory Background.........................................................................2

    II.     FASORP's Complaint...................................................................................................4

ARGUMENT .............................................................................................................................5

    I.      FASORP Has No APA Claim .....................................................................................6

        A.  FASORP Has an Adequate Alternative Remedy ...............................................6

        B.  The Department Has Made No Final Agency Action....................................8

        C.  FASORP'S APA Facial Challenge to the Regulations Is Time-Barred .....................10

    II.     Neither Title VI nor Title IX Provides a Cause of Action Against the Department to Compel Termination of Funding .................................................................................12

    III.    Plaintiff Has No Claim Under *Ex Parte Young* ........................................................15

    IV.    FASORP Fails To Plead Article III Standing. ...........................................................18

        A.  Plaintiff Fails To Allege That Its Members Suffered An Injury-in-Fact ...................19

        B.  Plaintiff Fails To Allege Standing To Sue The Government......................................23

CONCLUSION.......................................................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adarand Contractors, Inc. v. Pena,*
  515 U.S. 200 (1995) ................................................................................................. 22

*Alexander v. Sandoval,*
  532 U.S. 275 (2001) ................................................................................................. 12

*Allen v. Wright,*
  468 U.S. 737 (1984) ..................................................................................... 18, 24, 25

*Ashcroft v. Iqbal,*
  556 U.S. 663 (2009) ................................................................................................... 6

*Barnes v. Gorman,*
  536 U.S. 181 (2002) ................................................................................................... 2

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ................................................................................................... 6

*Bennett v Spear,*
  520 U.S. 154 (1997) ................................................................................................... 9

*Cannon v. Univ. of Chicago,*
  441 U.S. 677 (1979) ................................................................................. 2, 13, 14, 15

*Cierco v. Mnuchin,*
  857 F.3d 407 (D.C. Cir. 2017) ............................................................................... 24

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) ........................................................................................... 21, 23

*Council of and for the Blind of Delaware County Valley, Inc. v. Regan,*
  709 F.2d 1521, 1532-33 (D.C. Cir. 1983) ................................................................ 7

*Cousins v. Sec'y of the U.S. Dep't of Transp.,*
  880 F.2d 603 (1st Cir. 1989) ................................................................................... 13

*Davidson v. Mann,*
  129 F.3d 700 (2d Cir. 1997) .................................................................................... 10

*Diaz v. U.S.,*
  517 F.3d 608 (2d Cir. 2008) .................................................................................... 12

*Draper v. Healey,*
    827 F.3d 1 (1st Cir. 2016) ................................................................ 20, 21

*Dunn-McCampbell Royalty Interest, Inc. v. National Park Service,*
    112 F.3d 1283 (D.C. Cir. 1997) ........................................................ 10, 11

*E.E.O.C. v. Peabody Western Coal. Co.,*
    610 F.3d 1070 (9th Cir. 2010) ................................................................ 16

*Ex Parte Young,*
    209 U.S. 123 (1908) ........................................................................ 15, 16

*Freedom Republicans, Inc. v. Fed. Election Comm'n,*
    13 F.3d 412 (D.C. Cir. 1994) ...................................................... 18, 24, 25

*Friends of the Earth, Inc. v. Laidlow Envtl. Servs. (TOC), Inc.,*
    528 U.S. 167 (2000) ............................................................................ 19

 *Functional Music, Inc. v. FCC,*
    274 F.3d 543 (D.C. Cir. 1958) ........................................................ 11, 12

*Garcia v. Vilsack,*
    563 F.3d 519 (D.C. Cir. 2009) .................................................................. 8

*Gillis v. HHS,*
    759 F.2d 565 (6th Cir. 1985) ................................................................... 7

*Graceba Total Commc'ns v. FCC,*
    115 F.3d 1038 (D.C. Cir. 1997) ...................................................... 11, 12

*Grimes ex rel. Grimes v. Cavazos,*
    786 F. Supp. 1184 (S.D.N.Y. 1992) ...................................................... 14

*Hire Order Ltd. v. Marianos,*
    698 F.3d 168 (4th Cir. 2012) ................................................................ 10

*In re Dairy Mart Convenience Stores, Inc.,*
    411 F.3d 367 (2d Cir. 2005) .................................................................. 16

*Isaacs v. U.S. Dep't of Educ.,*
    2018 WL 1257760 (D. Mass. Mar. 12, 2018) ............................................ 7

*J.S. v. Attica Central,*
    *Schs.*, 386 F.3d 107 (2d Cir. 2004) ....................................................... 5

*Jersey Heights Neighborhood Ass'n v. Glendening,*
    174 F.3d 180 (4th Cir. 1999) ........................................................... 7, 14

*Knight First Amendment Institute v. Trump*,
    302 F. Supp. 3d 541 (S.D.N.Y. 2018)..................................................................... 17

*Larson v. Domestic & Foreign Commerce Corp.*,
    337 U.S. 682 (1949).............................................................................................. 16

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992).............................................................................................. 19

*Lunney v. United States*,
    319 F.3d 550 (2d Cir. 2003)................................................................................. 6, 9

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000).................................................................................... 5

*Marlow v. U.S. Dep't of Educ.*,
    820 F.2d 581 (2d Cir. 1987)......................................................................... 7, 13, 14

*Midwest Fence Corp. v. United State Dep't of Transp.*,
    840 F.3d 932 (7th Cir. 2016) ............................................................................ 22, 25

*NAACP v. Med. Ctr., Inc.*,
    599 F.2d 1247 (3d Cir. 1979)................................................................................. 14

*NAACP v. Sec. of HUD*,
    817 F.2d 149 (1st Cir. 1987).................................................................................. 13

*National Wrestling Coaches Ass'n v. Dep't of Educ.*,
    366 F.3d 930 (D.C. Cir. 2004) .......................................................................... passim

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*,
    508 U.S. 656 (1993)......................................................................................... 21, 25

*New York City Employees' Ret. Sys. v. S.E.C.*,
    45 F.3d 7 (2d Cir. 1995).......................................................................................... 6

*Owner-Operator Independent Drivers Ass'n v. United State Dep't of Transp.*,
    879 F.3d 339 (D.C. Cir. 2018) ............................................................................... 19

*Playboy Enters., Inc. v. Pub. Serv. Comm'n of P.R.*,
    906 F.2d 25 (1st Cir. 1990).......................................................................... 13, 14,  20

*Presbyterian Church (U.S.A.) v. United States*,
    870 F.2d 518 (9th Cir. 1989) ................................................................................ 16

*Pub. Citizen v. Nuclear Reg. Comm'n*,
    901 F.2d 147 (D.C. Cir. 1990) ............................................................................... 10

*Renteria v. Donahue*,
  1996 WL 446905 (10th Cir. 1996) ................................................................. 7, 14

*Rodriguez v. United States*,
  852 F.3d 67 (1st Cir. 2017) ............................................................................. 10

*Rothstein v. UBS AG*,
  708 F.3d 82 (2d Cir. 2013) .............................................................................. 17

*Salazar v. King*,
  822 F.3d 61 (2d Cir. 2016) ................................................................................ 9

*Salvador v. Bennett*,
  800 F.2d 97 (7th Cir. 1986) ............................................................................. 14

*Seminole Tribe of Fla. v. Fla.*,
  517 U.S. 44 (1996) .................................................................................... 16, 17

*Simon v. E. Ky. Welfare Rights Org.*,
  426 U.S. 26 (1976) ......................................................................................... 23

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ...................................................................... 19, 21, 22

*Steel Co. v. Citizens for a Better Environment*,
  523 U.S. 83 (1998) ......................................................................................... 19

*Stimac v. Barr*,
  10 F.3d 808 (9th Cir. 1993) ............................................................................... 7

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) ................................................................................. 17, 19

*Town of Chester v. Laroe Estates, Inc.*,
  137 S. Ct. 1645 (2017) ................................................................................... 19

*Turner v. Sec'y of HUD*,
  449 F.3d 536 (3d Cir. 2006) ........................................................................... 7, 8

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
  ⸺ U.S. ⸺, 136 S. Ct. 1807 (2016) ............................................................... 8

*United States v. Nordic Village, Inc.*,
  503 U.S. 30 (1992) ......................................................................................... 12

*United Food & Com. Workers Union Local 751 v. Brown Group, Inc.*,
  517 U.S. 544 (1996) ....................................................................................... 20

*Vann v. Kempthorne*,
    534 F.3d 741 (D.C. Cir. 2008) ................................................................. 15

*Wash. Legal Found. v. Alexander*,
    984 F.2d 483 (D.C. Cir. 1993) ................................................................... 7

*Weaver v. Federal Motors Carrier Safety Administration*,
    744 F.3d 142 (D.C. Cir. 2014) ................................................................. 11

*Wind River Mining Corp. v. United States*,
    946 F.2d 710 (9th Cir. 1991) .................................................................. 10

*Wong v. Doar*,
    571 F.3d 247 (2d Cir. 2009) .................................................................... 10

**Statutes**

5 U.S.C. § 701 ............................................................................................ 6

5 U.S.C. § 702 ...................................................................................... 6, 12

5 U.S.C. § 704 .................................................................................. 6, 8, 9

20 U.S.C. § 1681 ................................................................................... 2, 16

20 U.S.C. § 1682 .............................................................................. 2, 15, 17

20 U.S.C. § 1683 ........................................................................................ 3

28 U.S.C. § 2401 ...................................................................................... 11

33 U.S.C. § 1365 ...................................................................................... 12

42 U.S.C. § 2000d .................................................................................. 2, 16

42 U.S.C. § 2000d-1 ............................................................................ passim

42 U.S.C. § 2000d-2 ................................................................................... 3

42 U.S.C. § 7604 ...................................................................................... 12

34 C.F.R. §§ 100.1-100.13 .......................................................................... 16

34 C.F.R. § 100.3(b)(6)(ii) ................................................................... 4, 11, 24

34 C.F.R. §§ 100.6-100.11 .................................................................. 3, 15, 25

34 C.F.R. § 100.7(a) ................................................................................... 3

34 C.F.R. § 100.7(b) ............................................................................................... 3, 9, 15

34 C.F.R. § 100.7(c) ............................................................................................... 3, 9, 15

34 C.F.R. § 100.7(d) ...................................................................................................... 9

34 C.F.R. § 100.8(c) ................................................................................................. 3, 18

34 C.F.R. § 106.3(b) ................................................................................................. 4, 24

34 C.F.R. § 106.71 ......................................................................................................... 3

Defendants United States of America and Betsy DeVos, in her official capacity as U.S. Secretary of Education, by their attorney, Geoffrey S. Berman, United States Attorney for the Southern District of New York (the "Department" or the "Government"), hereby moves to dismiss the claims against the Government in the complaint filed by plaintiff Faculty, Alumni, and Students Opposed to Racial Preferences ("FASORP" or "Plaintiff") for lack of subject matter jurisdiction and failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff has neither a claim against the Government nor standing to assert one.

First, FASORP cannot seek relief under the Administrative Procedure Act for three reasons: FASORP has an adequate alternative remedy in the form of a claim against the alleged discriminators, there has been no final action which this Court could review, and Plaintiff's facial challenge to the regulations identified in the First Amended Complaint are time-barred.

Second, Plaintiff also has no cause of action under either Title VI of the Civil Rights Act of 1964 or Title IX of the Education Amendments of 1972 because those statutes do not expressly provide for one, and precedent strongly counsels against inferring such a cause of action against the Government.

Third, *Ex Parte Young* offers no path to relief because claims against agency action are now channeled through the APA, Congress already provides a remedial scheme to address discrimination, and, in any event, an *Ex Parte Young* plaintiff cannot demonstrate that its alleged injury is traceable to the Government and would be redressed by the sought-after injunction.

Finally, even if FASORP had a cause of action, Plaintiff fails to allege Article III standing.  FASORP does not allege that any of its members has suffered or will imminently

suffer an injury-in-fact at the hands of any purported policy of the other defendants, and even if the Court were to assume such an injury-in-fact, FASORP has not alleged how any Government action has caused any of its members an injury that is redressable by this Court in this case.

In sum, Plaintiff's claims against the Government are meritless, and should be dismissed.

## BACKGROUND

### I.     Statutory and Regulatory Background

Title VI of the Civil Rights Act of 1964 ("Title VI") prohibits discrimination on the basis of race, color, or national origin by recipients of federal financial assistance.  42 U.S.C. § 2000d. Title IX of the Education Amendments of 1972 ("Title IX") prohibits discrimination based on sex in federally funded education programs and activities, 20 U.S.C. § 1681, and is modeled after and interpreted consistently with Title VI, *Cannon v. Univ. of Chicago*, 441 U.S. 677, 696 (1979); *see also Barnes v. Gorman*, 536 U.S. 181, 185 (2002).

There are two mechanisms for enforcing Title VI's and Title IX's nondiscrimination mandates.  First, individuals injured by discriminatory practices can bring a cause of action directly against the discriminating educational institution.  *Cannon*, 441 U.S. at 688-89.  There is no requirement to file an administrative complaint or exhaust any administrative remedies before pursuing such an action.  *Id.*  Second, federal agencies that disburse federal funds to educational institutions must have regulations ensuring compliance with Titles VI and IX.   *See* 42 U.S.C. § 2000d-1; 20 U.S.C. § 1682.  If the agency determines that there has been a violation of either statute, then it must attempt to ensure compliance with Title VI and Title IX through voluntary compliance agreements, and only if that process fails, can the agency initiate a process that could lead to the termination of funding.  *Id.*

2

To enforce compliance with Title VI and Tile IX, the Department has established procedures for conducting compliance reviews and investigating complaints of discrimination.[1] *See* 34 C.F.R. § 100.6-100.11 (Title VI procedures); 34 C.F.R. § 106.71 (incorporating Title VI's procedures into Title IX).  Compliance reviews are conducted "from time to time" by the Department, and consist of reviewing the practices of a particular educational institution to determine whether it is complying with Title VI and Title IX.  34 C.F.R. § 100.7(a).  Under the Department's complaint procedure, any individual who believes he or she or any class of individuals has been subjected to unlawful discrimination may file a written complaint with the Department.  34 C.F.R. § 100.7(b).  In either case—compliance review or written complaint—if the Department investigates and determines that the recipient is not complying with Title VI or Title IX, the Department may undertake a series of compliance efforts, beginning with voluntary resolution agreements and potentially culminating in the termination of financial assistance or referral to the U.S. Department of Justice for appropriate enforcement proceedings.  34 C.F.R. § 100.7(c)-(d), 100.8.

The Department may not suspend or terminate financial assistance, however, until it has (1) notified the funding recipient of its infraction; (2) determined that compliance cannot be secured voluntarily; (3) given an opportunity for a hearing; (4) made an express finding on the record of a violation; and (5) filed a full written report with Congress of the grounds for terminating financial assistance.  34 C.F.R. § 100.8(c); *see also* 42 U.S.C. § 2000d-1.  Persons aggrieved by the Department's termination of financial assistance may obtain judicial review of such action in accordance with the APA.  42 U.S.C. § 2000d-2; 20 U.S.C. § 1683.

---

[1] These procedures are carried out by the Office for Civil Rights ("OCR"). *See* 34 C.F.R. § 100.7(c).

3

## II.     FASORP's Complaint

FASORP is a Texas-based unincorporated nonprofit organization.  Dkt. No. 39 ("First Amended Complaint" or "FAC") ¶ 3.  FASORP has asserted claims against private litigants as well as the Government.

FASORP alleges that Defendants New York University ("NYU"), NYU School of Law, NYU Law Review (collectively, the "NYU Defendants") are violating Title VI and Title IX by allegedly inappropriately using race and sex preferences in selecting the members and editors of the NYU Law Review, selecting articles at NYU Law Review, and hiring faculty at NYU School of Law.  FAC ¶¶ 4-6, 49-62.

FASORP has also named as defendants the United States of America and Betsy DeVos, in her official capacity as the Secretary of Education.  *Id.* ¶¶ 7-8.  FASORP asserts an APA challenge  of two regulations 34 C.F.R. § 100.3(b)(6)(ii) (Title VI) and 34 C.F.R. § 106.3(b) (Title IX) (collectively, the "Regulations"), contending that those provisions "violate the clear and unambiguous text of Title VI and Title IX," as well as "extend far beyond the holdings of *Grutter* and *Fisher*."  FAC ¶¶ 63-64.

The Regulations provide that "[e]ven in the absence of [a finding of] prior discrimination [on the basis of race, color, or national origin], a recipient in administering a program may take affirmative action to overcome the effects of conditions which resulted in limiting participation by persons of a particular race, color, or national origin," 34 C.F.R. § 100.3(b)(6)(ii); and "[i]n the absence of a finding of discrimination on the basis of sex in an education program or activity, a recipient may take affirmative action to overcome the effects of conditions which resulted in limited participation therein by persons of a particular sex," 34 C.F.R. § 106.3(b).

4

FASORP also contends the Department is "violating Title VI and Title IX by allowing New York University to receive federal funding," while the NYU Defendants are purportedly "discriminating on account of race and sex."  Compl. ¶ 67.  FASORP seeks to have the Court "hold unlawful and set aside" the Regulations, and "order the Secretary of Education to terminate federal funding to all components of" NYU.  FAC ¶ 70 (i), (j).

## ARGUMENT

FASORP's First Amended Complaint should be dismissed.  First, FASORP has no APA claim because it has an adequate alternative remedy, there is no final agency action, and the applicable statute of limitations bars a facial challenge to the regulations.  Second, Title VI and Title IX do not permit an APA suit against the Government, and there is no basis from which the Court could infer an implied right of action against federal agencies.  Third, Plaintiff has no resort to *Ex Parte Young* in this context.  Finally, FASORP fails to allege either a concrete and particularized injury-in-fact to any of its members or any causal link to a Government action, and thus, cannot establish that it has Article III standing.

FASORP's claims against the Government should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) and Rule 12(b)(6).  Under Rule 12(b)(1), a case is properly dismissed if the district court lacks the power to adjudicate it.  *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000).  When considering a Rule 12(b)(1) motion, the district court may refer to evidence outside the pleadings.  *Id.*  While the court must accept as true all material factual allegations in the complaint, it need not draw all reasonable inferences in Plaintiff's favor.  *See J.S. v. Attica Central Schs.*, 386 F.3d 107, 110 (2d Cir. 2004).  Plaintiff has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists.  *Makarova*, 201 F.3d at 113.

Under Rule 12(b)(6), a complaint must be dismissed if it fails to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 663, 678 (2009) (internal quotation marks omitted). While courts assume "that all of the complaint's allegations are true," *id.,* this assumption does not excuse a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## I.   FASORP Has No APA Claim

The First Amended Complaint cites the APA as the only express waiver of sovereign immunity for its claim against the Department. *See* FAC ¶ 41; 5 U.S.C. § 702. But Plaintiff cannot assert an APA claim because it has an "other adequate remedy in a court," namely Title VI and IX claims against the alleged discriminators. 5 U.S.C. § 704; *New York City Employees' Ret. Sys. v. S.E.C.*, 45 F.3d 7, 14 (2d Cir. 1995) ("We may not even entertain the claim against the agency, however, if the plaintiffs have an adequate alternative legal remedy against someone else."). Also, the Department has made no "final agency action" that could be the subject of APA review. 5 U.S.C. § 704; *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003) ("The APA authorizes only a challenge to 'final' action of an 'agency.'" (quoting 5 U.S.C. §§ 701(a), 704)). Finally, FASORP's APA challenge to the Regulations asserts that on their face, those Regulations exceed their statutory and constitutional authority, but such a challenge—absent a specific action by the Department against FASORP or its members—is time-barred.

### A.   FASORP Has an Adequate Alternative Remedy

In *Cannon*, the Supreme Court confirmed an implied right of action under Titles VI and IX against federal funding recipients who engage in unlawful discrimination. 441 U.S. at 689-717. Since then, courts have routinely rejected APA suits against the federal government that allege violations of Title VI and Title IX because plaintiffs have an adequate, and more direct remedy against the recipients. *National Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d

930, 947 (D.C. Cir. 2004) ("[T]he availability of a private cause of action directly against universities that discriminate in violation of Title IX constitutes an adequate remedy that bars appellants' case [against the Department of Education]."); *Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 191-92 (4th Cir. 1999) (dismissing APA claim against federal agency in Title VI context because "*Cannon*'s direct remedy against funding recipients is not only 'adequate' but, as the Supreme Court recognized, is preferable to a direct suit against the agency itself"); *Renteria v. Donahue*, 1996 WL 446905 at *2 (10th Cir. 1996) (dismissing APA claim in Title VI and IX context against the Department of Education because plaintiff "has another adequate remedy available in the form of an action against [the funding recipient]"); *Wash. Legal Found. v. Alexander*, 984 F.2d 483, 484, 486 (D.C. Cir. 1993) (dismissing APA claim to compel the Department of Education to enforce Title VI because plaintiffs "have an implied right of action under Title VI against the individual colleges and law schools to redress any discrimination they have allegedly suffered"); *Turner v. Sec'y of HUD*, 449 F.3d 536, 539-41 (3d Cir. 2006) (same); *Stimac v. Barr*, 10 F.3d 808 (9th Cir. 1993) (same); *Marlow v. U.S. Dep't of Educ.*, 820 F.2d 581, 583 n.3 (2d Cir. 1987) (same); *Gillis v. HHS*, 759 F.2d 565, 575-78 (6th Cir. 1985) (same); *Council of and for the Blind of Delaware County Valley, Inc. v. Regan*, 709 F.2d 1521, 1532-33 (D.C. Cir. 1983) (same); *Isaacs v. U.S. Dep't of Educ.*, 2018 WL 1257760 at *5 (D. Mass. Mar. 12, 2018) (same).

The D.C. Circuit's decision in *Women's Equity Action League v. Cavazos* ("WEAL") is particularly instructive. 906 F.2d 742 (D.C. Cir. 1990) (Ginsburg, J.). The plaintiffs in that case were "black students attending racially segregated public schools in seventeen states." *Id.* at 744. They did exactly what FASORP seeks to do here: they sued the Department under Title VI, Title IX, and the APA, arguing that the Department had unlawfully "continued to permit

7

federal funding of racially discriminatory institutions." *Id.* at 745. The district court dismissed the complaint. Affirming, the D.C. Circuit concluded that the APA did not provide grounds for judicial review because the plaintiffs had an adequate remedy against the federally funded schools. *Id.* at 750-51. The court cited *Cannon* and stated: "Plaintiffs have implied rights of action against federally-funded institutions to redress discrimination proscribed by Titles VI and Title IX." *Id.* at 750. Those "statutory remed[ies] specifically against the discriminating entity," the court continued, are "adequate and therefore preclusive of a default remedy under the APA." *Id.* at 750-51.

Just as in WEAL—and myriad other cases cited above—FASORP has an adequate remedy against the alleged discriminators that precludes relief against the Department. Indeed, FASORP is already pursuing that remedy in this case by raising Title VI and IX claims against the NYU defendants. This alternative remedy is adequate even if it is not identical to the relief sought against the Department, *Garcia v. Vilsack*, 563 F.3d 519, 522, 525 (D.C. Cir. 2009) ("the availability of actions against individuals may be adequate even if such actions . . . may be more arduous, and less effective in providing systemic relief"), and regardless of whether the claims against the NYU Defendants ultimately succeed. *See, e.g.*, *Turner*, 449 F.3d at 541 ("[A]nother remedy is not inadequate merely because the complainant cannot pursue it successfully.").

Because FASORP's adequate alternative remedy precludes relief under the APA, this Court lacks jurisdiction over the claims against the Department. Those claims should therefore be dismissed.

### B.  The Department Has Made No Final Agency Action

Plaintiff's claims against the Government should also be dismissed because there is no final agency action for the Court to review. The APA makes only a "*final* agency action for which there is no other adequate remedy in a court ... subject to judicial review." 5 U.S.C. § 704

(emphasis added).  Two conditions "must be satisfied for agency action to be 'final' under the APA." *U.S. Army Corps of Eng'rs v. Hawkes Co.*, ––– U.S. ––––, 136 S. Ct. 1807, 1813 (2016). "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature." *Id.* (internal quotation marks omitted); *see also Salazar v. King*, 822 F.3d 61, 82 (2d Cir. 2016) (same); *Lunney*, 319 F.3d at 554 (same). "[S]econd, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Hawkes*, 136 S. Ct. at 1813 (internal quotation marks omitted); *see also Salazar*, 822 F.3d at 82 (same); *Lunney*, 319 F.3d at 554.  The second prong will be satisfied where the agency's action "gives rise to 'direct and appreciable legal consequences.'" *Hawkes*, 136 S. Ct. at 1814 (quoting *Bennett v Spear*, 520 U.S. 154, 178 (1997)).

Here, Plaintiff has not identified any final agency action by the Department that could be subject to APA review, except for a facial challenge to Regulations, discussed *infra* Section I.C. While the Department has set forth procedures for an individual to submit a complaint to the agency regarding a recipient that is purportedly violating Title VI or Title IX, which initiates an administrative process for investigating the merits of such a complaint, 34 C.F.R. § 100.7(b)-(d), Plaintiff does not allege that it has made use of, let alone exhausted, the available process.  Nor has Plaintiff identified any final action taken by the Department pursuant to the Regulations that has affected FASORP or any of its members.  In short, no "decisionmaking process" at the Department has been initiated, let alone completed, *Hawkes*, 136 S. Ct. at 1813, and thus, Plaintiff has no path to relief through the APA either with respect to the demand that the Department terminate its funding of NYU or the challenge to the Regulations, 5 U.S.C. § 704.

### C.  FASORP'S APA Facial Challenge to the Regulations Is Time-Barred

The First Amended Complaint plainly states that FASORP challenges the Regulations regardless of their application in any particular context, FAC ¶¶ 46-47, 63-64 (alleging that their challenge to the Regulations is not just in the context of the NYU Defendants, but "every other law review and university in the country," and noting that they are not relying on any particular experiences of their members).  Thus, FASORP has asserted a facial challenge to the Regulations.  *See Davidson v. Mann*, 129 F.3d 700, 701-02 (2d Cir. 1997) ("Absent a specific allegation" that a regulation harmed plaintiff, the Court "treat[s] [the] claim as one asserting that the regulation is unconstitutional on its face.").  But that claim is time-barred.

"On a facial challenge to a regulation, the limitations period begins to run when the agency publishes the regulation in the Federal Register."  *Dunn-McCampbell Royalty Interest, Inc. v. National Park Service*, 112 F.3d 1283, 1287 (D.C. Cir. 1997); *accord Hire Order Ltd. v. Marianos*, 698 F.3d 168, 170 (4th Cir. 2012); *Wind River Mining Corp. v. United States*, 946 F.2d 710, 716 (9th Cir. 1991); *see Wong v. Doar*, 571 F.3d 247, 263 & n.15 (2d Cir. 2009) (procedural challenge to regulation accrues upon publication, triggering limitations period; substantive challenge accrues at time of adverse agency action on particular claim).  Indeed, even when a plaintiff makes "a substantive challenge to a regulation alleging that an agency exceeded its constitutional or statutory authority," the applicable statute of limitations would bar such a suit, unless the challenge "arises (1) in response to application of the regulation to the challenger; or (2) after the agency denies a plaintiff's petition to amend or rescind a regulation."  *Rodriguez v. United States*, 852 F.3d 67, 82 (1st Cir. 2017); *Dunn-McCampbell*, 112 F.3d at 1287; *Wind River Min. Corp.*, 946 F.2d at 710; *Pub. Citizen v. Nuclear Reg. Comm'n*, 901 F.2d 147, 152 (D.C. Cir. 1990).

Here, the applicable six-year limitations period, 28 U.S.C. § 2401(a); *Dunn-McCampbell*, 112 F.3d at 1286-87, has long passed.  *See* 45 Fed. Reg. 30802, 30918, 30955 (May 9, 1980) (Department of Education adopting the regulations originally promulgated by the Department of Health, Education, and Welfare pursuant to Title VI and Title IX, including the current versions of 34 C.F.R. §§ 100.3(b)(6)(ii), 106.3(b)).  Moreover, FASORP has not identified any instance when the Department has applied the Regulation to FASORP or any of its members, nor has FASORP alleged that it petitioned the Department to rescind the Regulations.  Thus, FASORP's challenge to the Regulations is time-barred.

Any reliance on *Weaver v. Federal Motors Carrier Safety Administration*, 744 F.3d 142 (D.C. Cir. 2014), *Graceba Total Commc'ns v. FCC*, 115 F.3d 1038 (D.C. Cir. 1997), *Functional Music, Inc. v. FCC*, 274 F.3d 543 (D.C. Cir. 1958), or similar cases is misplaced.  In *Weaver*, petitioner challenged the inclusion of a contested Montana traffic violation in a database maintained by a component of the Department of Transportation.  744 F.3d at 143.  The only question that the court squarely considered and answered was whether it had jurisdiction under the Hobbs Act.  *Id.* at 146.  Along the way, the court did note that APA challenges to regulations were not limited to formal enforcement actions, but also could be brought by "those affected [by the rule to] challenge that application on the grounds that it conflicts with the statute from which its authority derives."  *Id.* (internal quotations and citations omitted).  The court then cited both *Functional Music* and *Graceba*: the former involving "the validity of rules that an agency applied in an order imposing certain limitations on a broadcast licensee," and the latter as involving "an order rejecting challenges to auction procedures to which a bidder objected."  *Id.* at 145.  All of those cases involved plaintiffs—unlike FASORP here—that were directly regulated entities seeking to overturn specific actions or orders taken against them.  *See Weaver*,

744 F.3d at 143-145 (petitioners sought to overturn specific motor vehicle citations against them); *Graceba*, 115 F.3d at 1040-41 (holding petitioner could include an otherwise time-barred facial constitutional claim when challenging an FCC order regarding bidding credits that applied in an auction in which petitioner participated); *Functional Music*, 274 F.2d at 546-48 (holding petitioner could challenge validity of rule after agency denied petition to change rule or postpone its enforcement).  Nothing in those cases allows Plaintiff to use the APA to seek relief in the absence of any identifiable action directed against Plaintiff or its members by the Department. To permit such a suit would ignore all of the limits placed on such actions by the APA itself.  *See* 5 U.S.C. §§ 702, 704.  Plaintiff has no support in the law for the type of challenge it seeks here, and thus, its APA claim should be dismissed.

## II.      Neither Title VI nor Title IX Provides a Cause of Action Against the Department to Compel Termination of Funding

Plaintiff has not and cannot identify any express cause of action against the Government in either Title VI or Title IX, nor should the Court infer the existence of an implied right of action against a federal agency with respect to its disbursements of federal funds.  "[P]rivate rights of action to enforce federal law must be created by Congress."  *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).  "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy."  *Id.*  Congress knows how to authorize suits directly against a federal agency when it wishes to do so.  *See, e.g.*, 33 U.S.C. § 1365(a)(2) (1976) (Federal Water Pollution Control Amendments of 1972); 42 U.S.C. § 7604 (Supp. V 1981) (Clean Air Act Amendments of 1970). Thus, such "[w]aivers of sovereign immunity must be 'unequivocally expressed' . . . and cannot arise by implication."  *Diaz v. U.S.*, 517 F.3d 608, 611 (2d Cir. 2008) (quoting *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33–34 (1992)).

12

Although the Supreme Court in *Cannon* acknowledged an implied right of action against federal funding recipients under Titles VI and IX, the Court expressed skepticism that a similar private right of action exists against the federal government.  *See Cannon*, 441 U.S. at 706–07 n.51, 715 (observing that Title VI "appears to have been a compromise aimed at protecting individual rights without subjecting the Government to suits" and noting that suits against federal agencies would be "disruptive" of agencies' "efforts efficiently to allocate [their] enforcement resources under Title IX"); *see also WEAL*, 906 F.2d at 750 (explaining that *Cannon* "found strong support in [the] legislative history" of Titles VI and IX for "suit[s] against a discriminatory fund recipient to terminate the offending discrimination[,] . . . but resistance on the part of lawmakers toward . . . suit[s] against the government to terminate federal funding").

Relying on *Cannon*, the Second Circuit subsequently determined that Section 504 of the Rehabilitation Act—which, like Title IX, was modeled after Title VI—does not create an implied cause of action against the federal government.  *Marlow v. U.S. Dep't of Educ.*, 820 F.2d 581, 583 (2d Cir. 1987).  The court stated, "[w]e do not believe that a private right of action by an individual complainant against a federal funding agency for review of an agency's finding of no discrimination can be implied under section 504."  *Marlow*, 820 F.2d at 583.  Interpreting a statute to imply such a right against the funding agency would be "inconsistent with the statutory scheme and the integrity of the Section 504 administrative process," and "would be 'far more disruptive' of its enforcement efforts 'than a private suit against the recipient of federal aid could ever be.'"  *Id.* (quoting *Cannon*, 441 U.S. at 707, n.41); *see also Cousins v. Sec'y of the U.S. Dep't of Transp.*, 880 F.2d 603, 605-07 (1st Cir. 1989) (Breyer, J.) (rejecting the idea that the Rehabilitation Act "tacitly creates a rather unusual legal animal called a 'private right of action against the federal government.'"); *NAACP v. Sec. of HUD*, 817 F.2d 149, 152-53 (1st Cir. 1987)

13

(citing *Cannon* and holding that Title VIII of the Fair Housing Act does not provide an implied

right of action against funding agencies).

Given the similarity between section 504 of the Rehabilitation Act, Title VI, and Title IX,

cases such as *Marlow*, *Cousins,* and *NAACP* strongly suggest that Title VI's or IX's implied

cause of action should not be extended to suits against the federal government.  This

interpretation of those cases would be consistent with the approach taken by every other post-

*Cannon* federal appellate opinion to decide the issue.  *See Nat'l Wrestling Coaches Ass'n*, 366

F.3d at 946 ("[T]here is no legislation pursuant to which agency actions under Title IX are made

reviewable by statute."); *Jersey Heights Neighborhood Ass'n*, 174 F.3d at 191 (refusing to imply

a private right of action against the federal government under Title VI and stating, "We do not

think Congress intended . . . individuals to circumvent [the] administrative scheme [for federal

agencies to secure voluntary compliance or to terminate funds] through direct litigation against

federal agencies."); *WEAL*, 906 F.2d at 748-50 (finding "no legislative intent" in Title IX to

create a private right of action against the federal funding agency); *Salvador v. Bennett*, 800 F.2d

97, 99 (7th Cir. 1986) ("Title VI follows this model: . . . a complainant told that the agency will

do nothing . . . may get 'review' not by suing the adjudicator but by pursuing the supposed

offender.");  *NAACP v. Med. Ctr., Inc.*, 599 F.2d 1247, 1254 n.27 (3d Cir. 1979) (same);

*Renteria*, 1996 WL 446905 at *2 (same); *Grimes ex rel. Grimes v. Cavazos*, 786 F. Supp. 1184,

1191 (S.D.N.Y. 1992) (same).[2]

Allowing FASORP's Title VI and IX claims to proceed against the Department would

repudiate sound precedent from every level of the federal judiciary.  Simply put, Congress did

_____

[2]The only federal appellate opinions that have allowed a private cause of action against the funding
agency were issued in pre-*Cannon* Title VI cases involving extraordinary circumstances that do
not apply here.  *See Marlow*, 820 F.2d at 583 (discussing the pre-*Cannon* opinions).

not intend the civil rights statutes to create private causes of action against federal agencies to compel termination of funding.  Such a measure, according to the Supreme Court, should be accomplished through the agency enforcement procedures that Title VI and IX expressly provide.  *See Cannon*, 441 U.S. at 704-05; 42 U.S.C. § 2000d-1, 20 U.S.C. § 1682 and 34 C.F.R. §§ 100.6-100.11.  Specifically, FASORP could have filed a written complaint with the Department, which would have triggered a process for the Department to determine whether the funding recipient has failed to comply with Title VI or Title IX.  S*ee* 34 C.F.R. § 100.7(b)-(c). The First Amended Complaint is devoid of any allegation that Plaintiffs filed a complaint with the Department regarding the NYU Defendants alleged practices, much less that the Department investigated those practices, found a failure to comply with Title VI or Title IX, and did not seek an appropriate remedy.  Instead, FASORP seeks to circumvent the administrative enforcement procedures by bringing non-existent civil rights claims against the Department of Education in federal court.  To preserve the statutory procedures and avoid wasting government resources in this action, FASORP's claims against the Department should be dismissed.

### III.    Plaintiff Has No Claim Under *Ex Parte Young*

Plaintiff will likely argue that it has a claim against Secretary DeVos under the doctrine of *Ex Parte Young*, 209 U.S. 123 (1908).  That argument is mistaken.  The doctrine of *Ex Parte Young* holds that "[a] federal court is not barred by the Eleventh Amendment from enjoining state officers from acting unconstitutionally, either because their action is alleged to violate the Constitution directly or because it is contrary to a federal statute or regulation that is the supreme law of the land."  *Vann v. Kempthorne*, 534 F.3d 741, 749 (D.C. Cir. 2008) (quoting 17A Charles Alan Wright et al., Federal Practice and Procedure § 4232 (3d ed. 2007)).  The doctrine relies on a fiction: that because the act of the official is unconstitutional, the official can be "stripped of his official or representative character and is subjected in his person to the consequences of his

individual conduct." *Ex Parte Young*, 209 U.S. at 174.  Thus, under *Ex Parte Young*, the official is individually enjoined from carrying out an *ultra vires* act.

In some instances, this doctrine has been applied to federal officers as well.  *See, e.g., Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689 (1949).  However, since the passage of the amendments to the APA in 1976, lawsuits seeking prospective relief for agency action have been channeled through the APA.  *See The Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 526 (9th Cir. 1989) (holding that "Congress' plain intent in amending § 702 was to waive sovereign immunity for all such suits, thereby eliminating the need to invoke the *Young* fiction").  While the Second Circuit has not expressly adopted this holding, the Ninth Circuit's view of the limits of *Ex Parte Young* after the APA is persuasive.  *Id.*; *see also E.E.O.C. v. Peabody Western Coal. Co.*, 610 F.3d 1070, 1085-87 (9th Cir. 2010).  Plaintiff's use of *Ex Parte Young* here admits of no limiting principle—it would be an exception to the APA that swallows the rule.  Thus, Plaintiff should not be permitted to recast its APA claim as an *Ex Parte Young* claim, and side-step the APA's requirements.

Furthermore, "Ex Parte Young is inapplicable where Congress has devised a comprehensive remedial scheme that prevents the federal courts from fashioning an appropriate equitable remedy."  *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 372 (2d Cir. 2005) (discussing *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 76 (1996)).  Here, Congress has created a specific remedial scheme to address issues of race and sex discrimination by recipients of federal funding.  *See* 42 U.S.C. §§ 2000d – 2000d-7; 20 U.S.C. §§ 1681 – 1683.  Further, the Department has set forth a regulatory scheme that individuals may access to file complaints regarding discriminatory practices.  *See* 34 C.F.R. §§ 100.1-100.13.  This scheme specifically provides that before any federal funding can be terminated, the Department must conduct an

investigation, attempt to resolve any findings of noncompliance thorough informal means, provide for a hearing and any administrative appeals, issue a final agency decision, exhaust judicial review, provide a report to Congress, and permit Congress to assess that report before the Department may terminate funding. *See* 42 U.S.C. § 2000d-1; 20 U.S.C. § 1682; 34 C.F.R. §100.8(c). Such a remedial scheme makes *Ex Parte Young* inapplicable, and thus, the claim should be dismiss. *Seminole Tribe*, 517 U.S. at 76 ("Where Congress has created a remedial scheme for the enforcement of a particular federal right, we have, in suits against federal officers, refused to supplement that scheme with one created by the judiciary.").

In any event, more fundamental problems afflict Plaintiff's *Ex Parte Young* claim, as well as all Plaintiff's other claims: traceability and redressability. *See Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013) ("[T]he plaintiff must demonstrate a causal nexus between the defendant's conduct and the injury.") (internal quotation marks omitted); *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) ("[I]t must be likely that a favorable judicial decision will prevent or redress the injury."); *see also infra* Section IV.B.

For *Ex Parte Young*, in particular, to provide a viable cause of action, enjoining the activity at issue must result directly in the relief sought. *See Knight First Amendment Institute v. Trump*, 302 F. Supp. 3d 541, 560 (S.D.N.Y. 2018).[3]  In *Knight*, plaintiffs' access to the President's twitter account had been blocked, and the plaintiffs' sought to have that blocked lifted. *Id.* at 553-54.  The court permitted the claim to proceed under *Ex Parte Young* "[b]ecause [the official] has the ability to unblock the plaintiffs, [and] any future injury will be traceable to

---

[3] The Government notes that *Knight* is currently on appeal to the Second Circuit, and raises a variety of novel issues that are not relevant here.  The Government cites to this case because it provides a particularly expansive view of *Ex Parte Young* as applied to federal actors. Even accepting, *arguendo*, the analysis of the *Knight* court, Plaintiff's *Ex Parte Young* claim still fails.

him because it will have resulted, at least in part, from his failure to unblock them." *Id.* at 560. The court found the use of *Ex Parte Young* appropriate because the direct action of the federal official, if compelled or enjoined by the court, would immediately remedy the plaintiffs' injury. *See id.*

Plaintiff has not and cannot plausibly allege that an injunction against Secretary DeVos would result in such direct relief.  First, since Plaintiff's injury stems from NYU's purportedly discriminatory policies, ceasing federal funding will not immediately result in ending the NYU Defendants' alleged discriminatory policies; rather, NYU will have to take independent steps to change their policies after such an injunction in order for Plaintiff to obtain relief.  Any injunction against the Government, thus, would not immediately and directly remedy Plaintiff's injury.  *See Allen v. Wright*, 468 U.S. 737, 752 (1984); *National Wrestling Coaches Ass'n*, 366 F.3d at 939-40; *Freedom Republicans, Inc. v. Fed. Election Comm'n*, 13 F.3d 412, 419 (D.C. Cir. 1994); *see also infra* Section IV.B.  Also, any injunction issued against Secretary DeVos cannot immediately end federal funding because the law does not permit the Department to simply cease federal funding, but instead, as noted above, requires the Department to engage in the multi-step administrative process, including directly engaging with Congress, prior to terminating federal funds. 42 U.S.C. § 2000d-1; 34 C.F.R. § 100.8(c).  Unlike the federal officials in *Knight*, Secretary DeVos and the Department are not empowered to simply cease federal funding of any recipient, including NYU.  In short, the injunction cannot give Plaintiff what it seeks, and thus, *Ex Parte Young* is not an appropriate vehicle for relief.

## IV.    FASORP Fails To Plead Article III Standing.

FASORP fails to allege either that its members have suffered or will suffer an injury-in-fact or that any injury-in-fact is due to the Government.  In the absence of such allegations,

Plaintiff cannot establish standing, and therefore, the claims against the Department should be dismissed.

A plaintiff seeking to invoke federal jurisdiction must establish all three elements of the "irreducible constitutional minimum of standing." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Specifically, the plaintiff must show that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The plaintiff must establish these elements "for each claim [it] seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1647 (2017) (citation omitted). When the relief sought is prospective, the plaintiff must show that she experiences an injury that is "'continuing' or 'imminen[t].'" *Owner-Operator Independent Drivers Ass'n v. United State Dep't of Transp.*, 879 F.3d 339, 346 (D.C. Cir. 2018) (quoting *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 108 (1998). And at the pleading stage, the plaintiff bears the burden to "clearly allege facts demonstrating each element." *Spokeo*, 136 S. Ct. at 1547 (alteration omitted) (citation omitted).

### A.  Plaintiff Fails To Allege That Its Members Suffered An Injury-in-Fact

An association "has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's own purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlow Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). Absent "specific allegations establishing that at least one identified member ha[s] suffered or [will] suffer harm," an entity like FASORP cannot have standing derived from its members. *Summers v. Earth Island Inst.*, 555 U.S. 488,

19

499 (2009); *see also United Food & Com. Workers Union Local 751 v. Brown Group, Inc.*, 517

U.S. 544, 555 (1996) ("[A]n organization suing as representative [must] include at least one

member with standing to present, in his or her own right, the claim . . . pleaded by the

association."); *Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016) (Souter, J.) ("[T]he association

must, at the very least, identify a member who has suffered the requisite harm."); *Playboy*

*Enters., Inc. v. Pub. Serv. Comm'n of P.R.*, 906 F.2d 25, 34 (1st Cir. 1990) (same).

The First Amended Complaint fails to meet this necessary threshold.  FASORP does not

identify any member, who was rejected after actually submitting an article, seeking admission to

the law review, or applying for a faculty position. Nor does FASORP make any allegations that

provide a basis for that member's belief that he was rejected based on his race or sex.   Plaintiff

fails even to state that the alleged harm has been inflicted specifically on its members who are

members of a protected class under Title VI and Title IX.  *See* FAC ¶¶ 30-45.

Instead, FASORP, without alleging anything specific about its membership, claims that

"faculty members of FASORP who submit articles to the NYU Law Review," "[m]embers of

FASORP who are alumni of the NYU Law Review," "[m]embers of FASORP who are current

students at NYU Law School," and FASORP members who "include individuals who have

sought and applied for entry-level or lateral teaching positions," as well as "potential candidates

for visiting professorships and lateral faculty appointments without any need to formally apply,"

are harmed by the alleged discriminatory practices, *id.* at ¶¶  33, 36, 38, 45.  Such generic

averments are insufficient to confer standing. *See Summers*, 555 U.S. at 497 (standing cannot be

established by "accepting the organization's self-description of the activities of its members" and

determining that "there is a statistical probability that some of those members are threatened with

concrete injury").

FASORP has also failed to aver that its members suffered an injury "that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo,* 136 S. Ct. at 1548. The injuries alleged—preferential article and faculty selection, diluted quality of editing, less-competent judging, diminished prestige of a credential, and suspicion towards law-review membership—are unsupported by any allegations that a member has, for instance, in fact been denied the opportunity to publish an article, law-review membership, or a teaching position as a result of that member's race or gender. *See* FAC ¶¶ 30-45. Nor do Plaintiff's amorphous allegations of future harm establish standing. Plaintiff offers no facts showing that the purported injuries are imminent but instead merely speculate that its members might be harmed at some unidentified future time. *See, e.g.*, FAC ¶¶ 39, 42, 45 (alleging that FASORP members "will suffer 'injury in fact'" or "will face discrimination"). Thus, Plaintiff's allegations of future harm do not satisfy the Supreme Court's repeated rule that "threatened injury must be *certainly impending* to constitute an injury in fact. . . . [A]llegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphases in original). FASORP's generalized allegations thus fall far short of the "heightened specificity [that] is obligatory at the pleading stage . . . where standing is at issue." *Draper*, 827 F.3d at 3.

Nor can Plaintiff establish standing based on alleged "denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993). *Northeastern Florida Chapter* sets forth a rule for the injury required to confer standing in equal protection cases. 508 U.S. at 667 ("The 'injury-in-fact' *in an equal protection case of this variety* is the denial of equal treatment resulting from the imposition of the barrier . . . .") (emphasis added). Plaintiff has not pleaded an equal protection claim, and accordingly, this

21

Court need not apply *Northeastern Florida*. It should instead apply the ordinary rule requiring Plaintiffs to identify an injury that is "concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

Moreover, even if Northeastern Florida Chapter and its progeny were pertinent to this context, they do not help Plaintiff.  The Supreme Court held that in such a scenario the plaintiff "seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing." *Id.*  In the government contractor context, this means that to challenge a racially discriminatory policy, a plaintiff "need not demonstrate that it has been, or will be, the low bidder on a Government contract"—that is, it would have won the contract.  *Adarand Contractors, Inc. v. Pena*, 515 U.S. 200, 211 (1995).

But that does not relieve a plaintiff from alleging that it, in fact, bids on contracts, and has not obtained them.  *See Midwest Fence Corp. v. United State Dep't of Transp.*, 840 F.3d 932, 940 (7th Cir. 2016) (establishing standing "[b]y alleging and then offering evidence of lost bids, decreased revenue, and difficulties keeping its business afloat as a result of the DBE program and its inability to compete for contracts on an equal footing with DBEs").  Thus, while Plaintiff does not need to allege that its members would have become members of the law review, or had an article accepted, or been given a faculty appointment "but for" NYU's purportedly discriminatory policies, Plaintiff must at minimum allege that its members have tried to obtain these positions and have been denied.  The complaint is devoid of any such allegations, and thus, fails to establish standing.

Moreover, *Northeastern Florida Chapter* and its progeny specifically concern government ordinances related to disadvantaged business entities in government contracting.   In that context, a government ordinance creates the specific challenged barrier to entry, and thus, it

22

is the cause of, and its removal the redress for, the injury.  *See Ne. Fla. Chapter*, 508 U.S. at 666

("when the government erects a barrier . . ." (emphasis supplied)).  As discussed below, there is

no specific ordinance or government regulation that specifically requires NYU to institute its

policy.

### B.  Plaintiff Fails To Allege Standing To Sue The Government

It is unclear how any action by the Department caused—Plaintiff's purported injuries.

"When the plaintiff is not himself the object of the government action or inaction he challenges,

standing is not precluded, but it is ordinarily substantially more difficult to establish." *Lujan*, 504

U.S. at 562 (internal quotation marks omitted). "In that circumstance, causation and

redressability ordinarily hinge on the response of the regulated (or regulable) third party to the

government action or inaction—and perhaps on the response of others as well." *Id.*  And courts

are usually "reluctan[t] to endorse standing on theories that rest on speculation about the

decisions of independent actors." *Amnesty Int'l USA*, 568 U.S. at 414.  "In other words, mere

'unadorned speculation' as to the existence of a relationship between the challenged government

action and the third-party conduct 'will not suffice to invoke the federal judicial power.'"

*National Wrestling Coaches Ass'n*, 366 F.3d at 938 (citing *Simon v. E. Ky. Welfare Rights Org.*,

426 U.S. 26, 44 (1976)).

Here, Plaintiff alleges that the NYU Defendants are the purported discriminators, not the

Department. The Department did not create the allegedly discriminatory processes for choosing

the NYU Defendants' law review members, articles, or faculty; it is not involved in the

management or maintenance of the law review, the law school, or the university.  Any injuries

from the alleged discrimination are not traceable to the Department—they are traceable to, if

anybody, the NYU Defendants.  And the fact that NYU is funded in part by federal money does

not mean that any purported injuries caused by the NYU Defendants are likewise caused by the

federal government.  Where, as here, a purported injury "hinge[s] on the independent choices" of

a regulated actor, standing is "substantially more difficult" to establish.  *Nat'l Wrestling Coaches*

*Ass'n*, 366 F.3d at 938.  "In such cases, the plaintiff must offer substantial evidence of a causal

relationship between the government policy and the third-party conduct, leaving little doubt as to

causation . . . ." *Cierco v. Mnuchin*, 857 F.3d 407, 418-19 (D.C. Cir. 2017) (internal quotation

marks omitted).

FASORP attempts to show that relationship by citing two of the Department's

regulations, 34 C.F.R. § 106.3(b) and 34 C.F.R. § 100.3(b)(6)(ii), and arguing that the

Department fails to enforce Titles VI and IX as written, thus enabling the NYU Defendants to

unlawfully discriminate based on race and sex.  FAC ¶¶ 46-48, 63.  But those regulations do not

require funding recipients to adopt any particular policies.  *See* 34 C.F.R. § 106.3(b); 34 C.F.R. §

100.3(b)(6)(ii).  And Plaintiff does not argue that the NYU law review or law school even relied

on those regulations when they selected the processes at issue.  Thus, "the line of causation

between the illegal conduct and injury [is] too attenuated" to satisfy the traceability element of

Article III standing.  *Allen*, 468 U.S. at 752 (finding Black public school children lacked standing

to challenge IRS tax policies toward racially discriminatory private schools because it was

"entirely speculative . . . whether withdrawal of a tax exemption from any particular school

would lead the school to change its policies."); *National Wrestling Coaches Ass'n*, 366 F.3d at

939-40 (finding a lack of redressability in part because "nothing but speculation suggests that

schools would act any differently than they do with the [challenged regulations] in place");

*Freedom Republicans, Inc. v. Fed. Election Comm'n*, 13 F.3d 412, 419 (D.C. Cir. 1994) (holding

that although loss of federal funding would result in a problem for the Republican Party, the

court "cannot begin to predict" how such loss of funding "might have on Party decisionmaking as to so vital a political decision as delegate allocation.").

Despite its failure to demonstrate a sufficient causal nexus between the Department's alleged conduct and FASORP's purported injuries, Plaintiff asks this Court to "order the Secretary of Education to terminate federal funding to all components of" NYU and "hold unlawful and set aside" the aforementioned regulations.  FAC, ¶ 70 (i), (j).  But funding termination cannot be achieved by collateral litigation against the Department.  Instead, it requires initiating the multi-step administrative process laid out in Titles VI and IX and their implementing regulations, against the offending institution. *See* 34 C.F.R. §§ 100.6-100.11.  Plaintiff utterly fails to allege that it or any of its members have attempted to use that process, and have suffered any adverse result— without at least that, Plaintiff lacks standing.  *See Ne. Fla. Chapter*, 508 U.S. at 666; *Midwest Fence Corp.*, 840 F.3d 940.  Even if the Court were to set aside the regulations, the NYU Defendants may still choose to maintain the processes at issue, as neither the regulations nor the Department's enforcement of those regulations required NYU's processes in the first place.  *See Allen*, 468 U.S. at 752; *National Wrestling Coaches Ass'n*, 366 F.3d at 939-40; *Freedom Republicans, Inc.*, 13 F.3d at 419.  Thus, Plaintiff has failed to allege standing to sue the Government, and the First Amended Complaint should be dismissed pursuant to Rule 12(b)(1).

## **CONCLUSION**

For the foregoing reasons, the Government respectfully requests that the Court dismiss

the claims against the Department.


Dated: New York, New York
       May 9, 2019

                                        GEOFFREY S. BERMAN
                                        United States Attorney for the
                                        Southern District of New York

                                    BY: */s/Arastu K. Chaudhury*
                                        ARASTU K. CHAUDHURY
                                        Assistant United States Attorney
                                        86 Chambers Street, 3d Floor
                                        New York, NY 10007
                                        (212) 637-2633
                                        *Attorney for the Government*


To:     All counsel of record (by ECF)