USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #_____
DATE FILED: March 31, 2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FACULTY, ALUMNI, AND STUDENTS OPPOSED
TO RACIAL PREFERENCES,

                                Plaintiff,

- against -

NEW YORK UNIVERSITY LAW REVIEW, NEW
YORK UNIVERSITY SCHOOL OF LAW, NEW
YORK UNIVERSITY, UNITED STATES OF
AMERICA, and BETSY DEVOS, *in her official
capacity as U.S. Secretary of Education*,

                                Defendants.

**OPINION AND ORDER**

18 Civ. 9184 (ER)

Ramos, D.J.:

       Faculty, Alumni, and Students Opposed to Racial Preferences ("FASORP"), brings this action for declaratory or injunctive relief pursuant to Title VI and Title IX, against New York University Law Review (the "Law Review"), New York University School of Law (the "Law School"), New York University ("NYU") (collectively the "NYU Defendants"), United States of America and Betsy DeVos (the "Federal Defendants," and with the NYU Defendants, "Defendants"). FASORP alleges that the NYU Defendants violated Title VI and Title IX by considering sex and race in the Law Review's selection of members and articles, and in NYU's faculty hiring. FASORP further alleges that the United States government, through the Department of Education and its Secretary, Betsy DeVos, enabled this discrimination by incorrectly interpreting Title VI and Title IX to issue regulations permitting consideration of race and sex and by continuing to provide federal funding to NYU. The NYU Defendants and the Federal Defendants move separately to dismiss this action. For reasons set forth below, their motions to dismiss are GRANTED.

I.  **BACKGROUND**[1]

   A.  **Factual Background**

FASORP is an unincorporated nonprofit membership association organized under the laws of Texas. Am. Compl. ¶ 3. NYU is located in New York, New York. *Id*. ¶ 4. The Law Review is an academic journal edited and operated by students at the Law School. *Id*. ¶ 6. The student editors of the Law Review select the articles that the Law Review will publish, as well as the students who will serve as future members and editors of the Law Review. *Id*. ¶ 9. Until recently, membership on the Law Review was reserved for students selected on the basis of their grades and performance on a writing competition. *Id*. ¶ 10.

In recent years, the Law Review has incorporated race and sex into its membership selection policies. *Id*. ¶¶ 12–13. Among the fifty spots available on the Law Review each year, fifteen students are selected solely based on their writing competition performance, another fifteen are chosen solely on the basis of their first-year grades, and eight students are selected based on a combination of both. *Id*. ¶ 13. The remaining twelve spots are set aside for selections made by the Law Review's Diversity Committee. *Id*. ¶ 14.

To fill these twelve spots, the Law Review requires all applicants to submit personal statements, which it evaluates in light of various factors including but not limited to race, ethnicity, gender, sexual orientation, national origin, religion, socio-economic background, ideological viewpoint, disability, and age. *Id*. ¶ 15. Applicants are instructed to clearly identify and discuss any personal characteristics, background, unique experiences, or qualifications that they would like the selection committee to aware of. *Id*. Applicants are also permitted to share personal and professional information in a separate resume, on which they are instructed to not

---

[1] The following facts, drawn from the first amended complaint filed by FASORP ("Am. Compl."), Doc. 39, are accepted as true for the purpose of the instant motion and construed in the light most favorable to FASORP.

put their names and addresses. *Id*. ¶ 16. The Law Review allegedly uses these personal statements and resumes to give preferential treatment to applicants who are women, racial minorities, and members of the LGBTQ community. *Id*. ¶

The Law Review has similarly incorporated race and sex into its selection of articles for publication. *Id*. ¶ 17. In order to be published in the journal, authors are required to submit their manuscripts through a web-based submission service called Scholastica. *Id*. ¶ 19. Scholastica, at the Law Review's request, invites potential authors to provide their demographic information including their race, sexual orientation, and gender identity. *Id*. ¶ 20. For race, authors are invited to check a box for either "Black or African American," "Hispanic or Latino," "American Indian or Alaskan Native," "Asian," "Native Hawaiian or other Pacific Islander," "White/Non-Hispanic," or "Other, please specify." *Id*. ¶ 21. For sexual orientation, authors are invited to select either "prefer not to answer," "straight/heterosexual," "gay," "lesbian," "bisexual," or "other." *Id*. ¶ 22. For gender identity, authors may select either "prefer not to answer," "male," "female," "neither," "both" or "genderqueer." *Id*. ¶ 23.

The Law Review states on its website that it is committed to, "publishing scholarship written by authors from underrepresented backgrounds in the legal profession." *Id*. ¶ 25. NYU and the Law School allegedly permit these practices by the Law Review. *Id*. ¶ 26. The Law School also allegedly discriminates on the basis of race and sex in its faculty hiring by favoring female or minority faculty candidates over white males. *Id*. ¶ 27. The Department of Education has interpreted Title VI and Title IX, in 34 C.F.R. § 106.3(b) and § 100.3(b)(6)(ii) respectively, to permit universities to take affirmative action to "overcome the effects of conditions which resulted in limited participation therein by persons" of a particular sex, race, color or national

origin, in absence of "a finding of discrimination" on those bases or prior discrimination. *Id.* ¶¶ 27–28.

### B. Standing Pleadings[2]

FASORP pleads that its members have standing to sue as individuals by alleging:

- Faculty members of FASORP who submit articles to the Law Review are being subjected to race and sex discrimination because the Law Review gives preference to articles written by women and racial minorities at the expense of articles written by FASORP members who are white or male. *Id.* ¶ 33.

- Members of FASORP who submit articles to the Law Review suffer a separate and distinct injury in fact from the journal's membership-selection policies. Because the Law Review has subordinated academic merit to diversity considerations when selecting its members and editors, the articles that FASORP members submit to the Law Review are judged by less capable students—and these are the students who will ultimately make the career-altering decision of whether a professor's article gets accepted for publication or rejected. *Id.* ¶ 34.

- Those who have their articles accepted by the journal must submit to a student-run editing process, and the Law Review's use of race and sex preferences dilutes the quality of the students who edit an author's piece. *Id.* ¶ 35.

- The members of FASORP include faculty members or legal scholars who have submitted articles to the Law Review in the past, and who intend to continue submitting their scholarship to the Law Review in the future, and who will face discrimination on account of their race, sex, sexual orientation, or gender identity unless the Law Review is enjoined from enforcing its discriminatory article-selection policies. *Id.* ¶ 42.

- The members of FASORP include faculty members or legal scholars who have submitted articles to the Law Review in the past, and who intend to continue submitting their scholarship to the Law Review in the future, and who will have their submissions judged and evaluated by less capable students who made law review because of diversity criteria,

---

[2] FASORP also alleges that its members who are alumni of the Law Review suffer from a "dilution" of, or diminished prestige of the "law-review credential," and that FASORP members who are current students at NYU will either be denied an equal opportunity to compete for membership, or have their law review membership be "tainted." *Id.* ¶¶ 35–39. However, FASORP does not allege that there are any actual FASORP member who are alumni of the Law Review or current students at NYU.

4

      and who leapfrogged students with better grades and writing-competition scores.  *Id*. ¶ 43.

- The members of FASORP include individuals who have sought and applied for entry-level or lateral teaching positions at the Law School and intend to do so again in the future, or remain potential candidates for visiting professorships and lateral faculty appointments without any need to formally apply, and who face or will face discrimination on account of their race and sex unless NYU is enjoined from using race and sex preferences in its faculty hiring.  *Id.* ¶ 45.

## II. PROCEDURAL HISTORY

FASORP commenced the action on October 7, 2018.  Doc. 1.  On December 28, 2018, the NYU Defendants filed a letter for a pre-motion conference for leave to file a motion to dismiss.  Doc. 31.  On January 3, 2019, the Court held a pre-motion conference at which it granted FASORP leave to file an amended complaint and the NYU Defendants leave to file a motion to dismiss the amended complaint.  On February 28, 2019, FASORP filed the amended complaint.  Doc. 39.  On March 21, 2019, the NYU Defendants filed their motion to dismiss.  Doc. 41.  On May 9, 2019, the Federal Defendants filed a motion to dismiss.  Doc. 52.  Both sets of defendants move pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12 (b)(6) and allege that FASORP either lacks standing or fails to state a claim.

## III. LEGAL STANDARD

### A. Motion to Dismiss under Rule 12 (b)(1)

"Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subjection matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Morrison v. Nat's Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal citation and quotation marks omitted).  "Because standing is challenged on the basis of the pleadings, [the Court] accept[s] as true all material allegations of the complaint, and must construe the complaint in favor of the

[plaintiff]." *Connecticut v. Physicians Health Servs. Of Conn., Inc.*, 287 F.3d 110, 114 (2d Cir. 2002) (citation and internal quotation marks omitted). However, the burden remains on the plaintiff, as the party invoking federal jurisdiction, to establish its standing as the proper party to bring an action. *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 89 (2d Cir. 2009) (citation omitted); *see also FW/PBS, Inc. v. City Of Dallas*, 493 U.S. 215, 231 (1990) ("It is a long-settled principle that standing cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record," and if the plaintiff fails to "clearly [] allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute," he does not have standing under Article III) (internal citations and quotation marks omitted).

**B. Motion to Dismiss under Rule 12(b)(6)**

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). The Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the plaintiff

has not "nudged [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 680.

## C. Associational Standing

An association may assert standing to sue on behalf of its members when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977). It is well established that the first prong of the *Hunt* test is "grounded in Article III as an element of the constitutional case or controversy requirement" and that inclusion of at least one member with standing to individually bring the claim forwarded by the association is "an Article III necessity for the association's representative suit." *See United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 544–45 (1996).

To establish the first prong of the *Hunt* test, the association bears the burden to show: (1) one or more of its members have suffered an injury in fact, that is concrete, particularized, and actual and imminent as opposed to conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action; and (3) it is likely that the injury will be redressed by a ruling in favor of the association. *See Bldg. & Constr. Trades Council & Vicinity v. Downtown Dev., Inc.*, 448 F.3d 138, 145 (2d Cir. 2006) (internal citations and quotation marks omitted). A "particularized injury" is one that impacts the injured member in a "personal and individual way." *LaFleur v. Whitman*, 300 F.3d 256, 269 (2d Cir. 2002) (internal citation and quotation marks omitted).

In an action for injunctive or declaratory relief, a plaintiff's allegations of past injury are insufficient to establish standing, instead, the plaintiff must show a likelihood of future harm,

7

which is "a real and immediate threat of repeated injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983); *see also McCormick ex rel. McCormick v. Sch. Dist. Of Mamaroneck*, 370 F.3d 275, 284 (2d Cir. 2004). The Supreme Court has stressed that the threatened injury must be "*certainly impending*," or there is a "substantial risk" that the harm will occur, and that "allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 414 n.5 (2013) (internal quotation marks and citations omitted). The "injury in fact" standing inquiry is particularly rigorous in an action like this, where the plaintiff seeks to compel an executive agency to follow certain laws. *Robinson v. Sessions*, 721 Fed. App'x 20, 23 (2d Cir. 2018) (internal citations omitted).

## IV. DISCUSSION

Defendants assert that FASORP lacks Article III associational standing in the instant action because the amended complaint fails to specifically identify at least one injured FASORP member with standing to sue individually. Defendants further contend that FASORP has not alleged a concrete and particularized injury, or a real and immediate threat of repeated injury. In response, FASORP contends that it needs not identify its injured members by name. It furthers contends that it has adequately alleged both a concrete and particularized injury and future injury.

### A. Associational Standing

Preliminarily, both the NYU Defendants and the Federal Defendants point to *Summers v. Earth Island Inst.*, 555 U.S. 488, 498–99 (2009), and *Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016), for the proposition that an association must identify at least one member with standing to sue with specific allegations, if not by name. In response, FASORP cites *Bldg. & Constr. Trades Council* for the proposition that an association need not provide names to allege standing at the

pleading stage and avers that *Summers* was not decided at the pleading stage. *Bldg. & Constr. Trades Council*, 448 F.3d at 145 (finding no authority for the proposition that an association must name names in a complaint to properly allege standing at the pleading stage) (internal quotation marks omitted). The Supreme Court clarified in *Summers*, which was decided three years after *Bldg. & Constr. Trades Council*, that a plaintiff organization must at minimum, allege specifically that one or more identified member has suffered or would suffer harm. 555 U.S. at 498.

Additionally, courts within this Circuit and the First Circuit have relied on *Summers* in support of their standing inquiries at the motion to dismiss stage. *See Art & Antique Dealers League of America, Inc. v. Seggos*, 18 Civ. 2504(LGS), 2019 WL 416330, at *2–3 (S.D.N.Y. Feb 1, 2019) (citing *Summers* to require a plaintiff association to make specific allegations establishing at least one injured member at the pleading stage); *see also Draper*, 827 F.3d at 3 (citing *Summers* in requiring the plaintiff association to identify at minimum one injured member specifically at the pleading stage); *see also Residents & Families United to Save Our Adult Homes v. Zucker*, No. 16CV1683NGGRER, 2018 WL 1175152, at *6 (E.D.N.Y. Mar. 6, 2018), *appeal withdrawn*, No. 18-1078, 2018 WL 3454963 (2d Cir. July 9, 2018*)* (interpreting *Summers* at the pleading stage to require that "a plaintiff must name the members of an organization who were injured").

Here, the Court need not decide whether *Summers* mandates that a plaintiff association must use the actual name of one of its injured members at the pleading stage, because it is clear that a plaintiff association must at minimum, identify one injured member with specific allegations, which FASORP fails to do. *Seggos*, 2019 WL 416330, at *2. An association's "self-description of the activities of its members" will not do. *Id.* (quoting *Summers*).

9

FASORP's general descriptions of its own faculty members who have submitted articles to the Law Review in the past, are the type of pleadings that were explicitly rejected in *Summers*. This alone requires dismissal on the basis that FASORP inadequately pleads associational standing.

In addition, as explained in further detail below, FASORP's allegations also fall short of pleading either a concrete and particularized injury, or a real and immediate threat of repetition of that injury.

### B. Injury in Fact

Defendants contend, and this Court agrees, that FASORP's allegations regarding the Law Review's membership and articles selection processes, and faculty hiring by NYU fail to show a concrete and particularized injury.

First, the NYU Defendants contend that FASORP's faculty members have suffered no injury in fact from the Law Review's membership and articles selection process because there is no legally protected interest in having one's academic work evaluated by the most "capable" students. NYU Defendants' Mem. in Supp. of Mot. to Dismiss ("NYU's Mem."), Doc. 42 at 9.[3] Additionally, the Federal Defendants contend that FASORP has not alleged an injury in fact because it does not allege any member whose article was actually rejected by the Law Review, or whose application for a faculty position at NYU was actually denied. The Federal Defendants' Mem. in Supp. of Mot. to Dismiss ("Fed's Mem."), Doc. 53 at 20–21.

In response, FASORP makes two arguments. First, FASORP analogizes the alleged injury here to that alleged in *Powers v. Ohio*, 499 U.S. 400 (1991), where the Supreme Court held that a criminal defendant could contest raced-based exclusions of jurors through preemptory challenges, whether or not the defendant and the excluded jurors share the same race. Pl.'s Opp.

---

[3] The NYU Defendants also argue that FASORP's notion that minority and female students are inferior members of the Law Review is offensive and unsupported.

Mem. at 8–10. Extrapolating from *Powers*, FASORP avers that its faculty members have a legally protected interest to have their articles judged by a law review whose membership-selection process complies with Title VI and Title IX, just like a criminal defendant's legally protected interest in having the charges against him evaluated by a jury chosen without raced-based exclusions. *Id*. Second, FASORP argues, primarily relying on *Northeastern Fla. Chapter, Associated Gen. Contractors of America v. Jacksonville, Fla.*, 508 U.S. 656 (1993), that the injury here flows not from the rejection of an article submission or a faculty position application, but from being subject to discriminatory treatment. Pl.'s Resp. in Opp. to Mot. to Dismiss ("Pl.'s Resp."), Doc. 55 at 1–3.

FASORP's arguments miss the mark. First, unlike a criminal defendant's constitutional right to a fair trial and hence a fairly selected jury, there is no legal right to have one's article reviewed or published by a student-run academic law journal. FASORP has cited no legal authority for such a proposition, and the Court is aware of none. Reliance on *Jacksonville* does not cure this defect, because FASORP has not alleged a "government erected barrier." *See Comer v. Cisneros*, 37 F.3d 775, 793 (2d Cir. 1994) (interpreting *Jacksonville* to require allegation of a government-erected barrier to establish standing). Indeed, all the allegedly discriminatory policies here are implemented either by NYU, the Law School or the Law Review, none of which are governmental entities.[4] Therefore, FASORP has not alleged an injury in fact, that is "an invasion of a legally protected interest" that is concrete and particularized. *Jacksonville*, 508 U.S. at 663.

---

[4] Regarding FASORP's faculty hiring claim, nowhere in the amended complaint does FASORP allege any fact about the hiring practice of the Law School. Instead, FASORP asserts in one conclusory sentence that "NYU Law School, along with nearly every law school in the United States, discriminates on account of race and sex when hiring its faculty.…" Am. Compl. ¶ 27.

### C. Likelihood of Future Harm

FASORP's allegations regarding the Law Review's membership and article selection process are similarly inadequate in pleading a real and immediate threat of repetition of that injury.[5] As recounted above, FASORP alleges that its faculty members "intend to continue to submit articles" or intend to apply in the future, or remain potential candidates for faculty positions at NYU. The Supreme Court has made clear in *Clapper* that a plaintiff must show "concrete facts" showing a substantial risk of harm and cannot rely on speculation about "the unfettered choices made by independent actors not before the court." 568 U.S. at 414 n.5.

Even taking every reasonable inference in FASORP's favor, the amended complaint shows that FASORP's alleged threatened injury–being subject to discriminatory treatment– would only take place if: (1) a faculty member of FASORP authors a legal article at some point in the future; (2) that member submits that article to the Law Review; (3) the Law Review members are indeed composed of students that had chosen to identify their race and gender as noteworthy characteristics in their personal statements or resumes, and had received preferential treatments as a result thereof; (4) those students are "less capable" than students selected only on the basis of grades and other diversity factors; (5) the faculty member of FASORP volunteers his race and gender information, which the Law Review then uses to either give less weight to or reject his article; and (5) if those articles are accepted for publication, the Law Review would staff those "less capable" students as editors on those articles. Such a "highly attenuated chain of possibilities" cannot support standing, as a plaintiff cannot "manufacture standing merely by inflicting harm on [its] fear of hypothetical future harm that is not certainly impending."

---

[5] As aforementioned, the amended complaint only contains a conclusory statement by FASORP concerning its faculty hiring claim. FASORP cannot rely solely on conclusory allegations of injury for its faculty hiring claim, even at the pleading stage. *Baur v. Veneman*, 352 F.3d 625, 636–37 (2d Cir. 2003) ("a plaintiff cannot rely solely on conclusory allegations of injury or ask the court to draw unwarranted inferences in order to find standing").

*Clapper*, 568 U.S. at 410, 415. Failure to adequately plead this element alone dooms FASORP's action for declaratory and injunctive relief.

   D. **Failure to State a Claim**

In any event, even if the Court were to accept FASORP's standing allegations as sufficient, the amended complaint would still be dismissed for failure to state a claim.[6] To that end, Judge Sorokin's reasoning in finding that FASORP fails to state a claim in *Faculty, Alumni, & Students Opposed to Racial Preferences v. Harvard Law Review Assoc.*, No. 18 Civ. 12105, 2019 WL 3754023, at *8–9 (D. Mass. Aug. 8, 2019), is persuasive.

Standing deficiencies aside, FASORP fails to state a claim against NYU because: (1) FASORP does not allege, as a threshold requirement for its faculty hiring claim, that the federal funds received by NYU are primarily intended to provide employment; (2) FASORP fails to proffer any factual allegation describing the Law Review's article-selection process other than alleging that the Law Review receives background information of the authors and asserting in a conclusory way that the process is discriminatory, which is fatal to its article selection claim; (3) FASORP's factual allegations regarding the membership selection claim acknowledge that student applicants have discretion to highlight, if at all, personal characteristics including ideological viewpoint, socio-economic background and many other factors aside from race, sex and sexual orientation; and (4) that the amended complaint is devoid of factual allegations about the membership selection process by the Law Review, thereby unable to transform the facially holistic process into a functional equivalent of an unlawful quota or set-aside program. *Harvard Law Review*, 2019 WL 3754023, at *8–10.

---

[6] The NYU Defendants contend in their motion to dismiss that the Law School and the Law Review be dismissed as named defendants in this action pursuant to Fed. R. Civ. P. 4(m), on the basis that they are not legal entities amenable to service of process. Pl.'s Opp. Mem. at 24 n. 15. FASORP does not object. *Id.*

In addition, the Federal Defendants contend in their motion to dismiss, and FASORP concedes in its response, that FASORP does not have a cause of action to sue the Federal Defendants pursuant to the Administrative Procedures Act, Title VI and Title IX. *See* Fed's Mem. at 6–15; *see also* Pl.'s Resp. at 13–14. However, FASORP urges this Court to address its potential claim under *Ex parte Young* against Betsy DeVos as the Secretary of the Department of Education, which it raises for the first time in its opposition brief to the Federal Defendants' motion to dismiss. *Ex parte Young*, 209 U.S. 123 (1908); Pl.'s Resp. at 8. Indeed, nowhere in the amended complaint does FASORP even allude to the possibility of an *Ex parte Young* claim, whereas the amended complaint specifically identifies Title VI, Title IX and the Administrative Procedures Act as the legal bases for FASORP's claims against the Federal Defendants. It is well established in this district that a plaintiff cannot amend his pleadings in his opposition briefs. *O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989) ("[I]t is axiomatic that the [amended] complaint cannot be amended by the briefs in opposition to a motion to dismiss."). Therefore, FASORP has failed to state a claim either against the NYU Defendants, or against the Federal Defendants.

## V.     AMENDMENT

The NYU Defendants urge this court to dismiss the instant action with prejudice on the basis that FASORP has been on notice of the defects in its pleadings since the January 3, 2019 pre-motion conference. However, the Second Circuit, in *Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*, 797 F.3d 160 (2d Cir. 2015), reaffirmed the "liberal spirit" of amendment under Federal Rule of Civil Procedure 15 and counseled strongly against the dismissal of claims with prejudice prior to "the benefit of a ruling" that highlights "the precise defects" of those claims. *Id.* at 190–91 (quoting *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–

13 (2d Cir. 2011) (per curiam)). Here, while FASORP has previously been given leave to amend the original complaint, this is the Court's first opportunity to highlight the precise defects of its pleadings, and it is not yet apparent that any further opportunity to amend would be futile. Therefore, the instant action is dismissed without prejudice and FASORP is permitted, if it wishes, to file a second amended complaint.

## VI. CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss are GRANTED without prejudice. If FASORP wishes to file a second amended complaint, it must do so by April 21, 2020. The Clerk of the Court is respectfully directed to terminate the motions, Docs. 41 and 52.

It is SO ORDERED.

Dated: March 31, 2020
      New York, New York

_____
Edgardo Ramos, U.S.D.J.